## T. J. BULLARD v. W. F. STEWART ET AL.

### Decided April 6, 1907.

**1.—Mortgage—Foreclosure—Pleading.**

In a suit for debt and foreclosure of a mortgage lien it is not necessary that plaintiff allege the value of the mortgaged property. Such allegation is certainly unnecessary when the matter of value is put in issue by other parties to the suit.

**2.—Sale of Personal Property—Caveat Emptor.**

In the sale of personal property the rule of caveat emptor applies in this State, and one who buys stolen property takes no title as against the true owner.

**3.—Mortgage Lien—Future Advances—Validity.**

Mortgages to secure future advances are upheld both by the common law and the courts of this country; and even when no limit is fixed to the amount of such advances a recorded mortgage to secure the same is notice to a subsequent encumbrancer as to all sums advanced upon the mortgage prior to the acquisition of the subsequent lien and notice thereof to the first mortgagee.

**4.—Live Stock—Market Value—Evidence.**

Upon an issue as to the market value of certain horses and mules, a livestock journal published at the place of sale, the reports in which were regularly

made and correctly kept, was competent evidence. It was not essential that the editor should have personal knowledge of the sales reported, nor that the sales reported should be of mules and horses of the precise age, character and condition of those in controversy; it was sufficient if from the general classes reported the jury could deduce the value of the animals in controversy.

Appeal from the District Court of Ward County. Tried below before Hon. James L. Sherpherd.

*E. M. Whittaker* and *W. A. Hudson,* for appellant.—Where the mortgage describes a certain debt and advances not exceeding ........ dollars, the amount secured is only the debt described, so far as third parties are concerned. Louisville Banking Co. v. Leonard, 13 S. W. Rep., 521; Tully v. Harloe, 95 Am. Dec., 102; Moore v. Terry, 50 S. W. Rep., 998; Rood v. Welch, 28 Conn., 157; Martin v. Halbrooks, 55 Ark. 569; 5 Am. & Eng. Ency. Law, p. 968, 2d ed.; 6 Cyc., p. 1016; Cincinnati Leaf Tobacco Warehouse Co. v. Combs, 58 S. W. Rep., 420; Beers v. Waterbury, 8 Bosw. (N. Y.) 396.

Mortgagee must show good faith as against purchaser for valuable consideration with only constructive notice. Texas & P. Ry. Co. v. Gay, 86 Texas, 604.

The court erred in permitting the witness C. E. Lee to testify as to the prices of mules and horses from the files of a newspaper called the "Daily Live Stock Reporter," because: (a) Said witness did not know said prices of his own knowledge. (b) Said reports so published were not made to said witness, nor did he verify them. (c) Said testimony is hearsay. (d) Said testimony does not relate to the value of mules and horses at the time of conversion, to-wit: August 8, 1904. (e) Said testimony does not show that it is for mules and horses in the same condition, of the same age, kind and character as the stock in controversy. Southern Pac. Ry. v. Maddox, 75 Texas 300; Houston & T. C Ry. v. Smith, 46 S. W. Rep., 1047.

*Hunter & Hunter* and *J. E. Starley,* for appellees.

CONNER, CHIEF JUSTICE.—Appellant and appellee concur in the following statement of this case, viz.:

"Appellee, Pecos Valley Bank, brought this suit against appellee W. F. Stewart on two notes, one dated January 11, 1904, for $662, one dated June 3, 1904, for $350 and an open account for $30.25 and to foreclose a mortgage lien on 20 mules. It is alleged that appellee Stewart sold the mules to appellee Lisle, who in turn sold them to appellant Bullard, all with knowledge of the bank's lien. It further alleged said mules to be in possession of appellant Bullard in Ellis Co., Texas, who 'is about to convert same to his own use.'

"Appellee Stewart confessed judgment, admitting the Bank's allegations to be true. Stewart thereupon filed a cross bill against Lisle and Bullard seeking to recover the 20 mules so mortgaged and one other mule and six horses, alleging in substance that Lisle stole said property from Stewart by means of a bogus draft drawn by Lisle on Rhem & Farrish of Comanche, I. T. That Bullard bought said property with full knowledge of the fraudulent acts of Lisle. He asks judgment

for $2,700 damages, the alleged value of said stock, and for $3,000 vindictive damages.

"Appellant Bullard answered both original petition and Stewart's cross bill, by general demurrer, by general denial, by plea of innocent purchaser for value without notice, and by plea of estoppel.

"The bank and Stewart both dismissed as to Lisle, who was not served.

"Trial before a jury resulted in judgment in favor of bank against Stewart and Bullard for $1,316.09 and in favor of Stewart against Bullard for the bank's debt in case Stewart paid said debt.

"Motion for new trial overruled and defendant Bullard appeals."

The bank's petition was not subject to general demurrer, as appellant insists, on the ground that it failed to allege the value of the mules upon which it sought to foreclose its lien. Primarily the petition, which was sufficient in that respect, was for debt and to foreclose the mortgage therein described, and for conversion in the alternative in event only that the mules had been converted. Besides, the values were fully set forth in the answer of appellee Stewart to which appellant pleaded the general denial. He thus put the matter in issue for all parties and supplied a basis for the evidence to which no objection on this ground seems to have been urged.

Nor do we think the cross action of appellee Stewart against appellant subject to general demurrer. True the cross petition set forth the fact that Stewart at the time and place named sold the mules in controversy to Lisle, but it further charged that Lisle induced the sale and procured possession by the false and fraudulent statement that the check given in payment was good, knowing at the time that it was worthless and with intent to thereby fraudulently deprive him, Stewart, of the value of the mules. The allegations, if true, constituted the offense theft on Lisle's part under articles 861 and 947 of our penal code. Appellant therefore in his purchase from Lisle was subject to the law of *caveat emptor* which applies by the law of this State in sales of personal property. But if we could be mistaken in this and if title passed from Stewart and Lisle's offense was that of swindling as appellant insists, the cross petition distinctly alleges that appellant was put upon inquiry and had notice of Lisle's fraud. If so, appellant could not avoid liability on the ground of his purchase and be thus permitted to give effect to the fraud.

Appellant insists that it was error to admit in evidence, as against him, the open account of $30.25 and the note of June 3, 1904, for $350, because these evidences of Stewart's indebtedness to the bank were not specifically described in the mortgage. The mortgage, after securing the note for $662, provided that "this mortgage shall also extend to, include and cover any renewal of said note or indebtedness or any part thereof, and also any further and other advances of money hereafter made to the grantor herein by said grantee up to and including in the aggregate the sum of .......... Dollars, and also any interest that may accrue thereon and any and all reasonable costs and expenses of collecting the same by suit or otherwise." Mortgages to secure future advances are upheld both by the common law and the courts of this country and of England, and while there is some diversity of opinion as to whether the limit of such advances should

be named, in order to affect subsequent mortgagees and purchasers, it is held, even by those courts so affirming, that a recorded mortgage for an unlimited sum is notice to a subsequent incumbrancer as to all sums advanced upon the mortgage prior to the acquisition of the subsequent lien and notice thereof to the first mortgagee. See 1 Jones on Mortgages, 4th ed., arts. 364-365. It is undisputed that the mortgage in question was duly registered and that appellant's purchase was subsequent to the advances objected to. Such advances were therefore covered by the clause quoted.

Numerous objections are urged to the admission and exclusion of evidence, but we find nothing requiring more than passing notice. The most forceful objection perhaps is to the admission of the market prices of mules and horses from the "Daily Live Stock Reporter," published at the place of appellant's purchase, and at which appellant insisted values should be fixed. The reports covered the period in question and were shown to have been regularly made and correctly kept. It was hence not essential that the editor who testified had personal knowledge of the several sales reported, or that the sales purported to be of mules and horses of the precise age, character and condition of those in controversy. General classes were specified and the evidence of the class, etc., of those in controversy was before the jury, from all which values were deducible. Texas & Pac. Ry. Co. v. Donovan, 23 S. W. Rep., 735.

The remaining assignments attack the court's submission of the cause and the sufficiency of the evidence to sustain the verdict, but we find no error in these respects. It seems undisputed that Stewart was defrauded, as alleged, by Lisle and the court plainly instructed the jury in effect to find in favor of appellant on the issues of the cross action unless they found that appellant had notice, or by the exercise of ordinary care could have known of Lisle's fraud at the time of his purchase. This charge is objected to only on the ground that it fails to define ordinary care. There seems to be no direct, if any, contention that the evidence did not warrant the submission of the issue, and the charge, on this as well as on other issues, seems as favorable to appellant as he had any right to demand. The evidence, too, on the whole case, we think, supports the verdict and judgment. The discrepancy in the amount for which Stewart sold the mules to Lisle, and for which the jury found against appellant, and constituting the alleged excess, seems to be accounted for by interest from the date of appellant's conversion.

Finding no error in the trial the judgment is affirmed.

*Affirmed.*

Writ of error refused.