## BRIDGEPORT MACH. CO. et al. v. GEERS.
### No. 12428.

Court of Civil Appeals of Texas. Fort Worth. Feb. 21, 1931.

Rehearing Denied March 28, 1931.

Ben J. Dean, of Breckenridge, and C. T. Gettys, of Decatur, for appellants.

Donald & Donald, of Bowie, and Burch & Woodruff, of Decatur, for appellee.

CONNER, C. J.

This suit was instituted by W. C. Geers against the Bridgeport Machine Company to recover the value of certain oil well drilling machinery and tools that the plaintiff alleged had been converted by the defendant. In substance, the plaintiff alleged that on the 22d day of April, 1926, N. B. Dalton, of the state of Oklahoma, executed and delivered to the plaintiff his promissory note in the sum of $7,500, to secure which Dalton executed and delivered to the plaintiff a mortgage covering the tools in question then owned by him; that thereafter the machinery and tools were shipped to Wise county, for the purpose of drilling an oil well; that one J. C. Walker had contracted to do the drilling, but defaulted in his contract, whereupon one C. W. Whitehead took over the contract. The mortgage covered some 85 items, consisting of a gasoline engine, elevators, screws, hoists, ropes, clamps, stems, and other tools constituting what is termed by the witnesses an an oil well string of tools, all of which were set forth in the mortgage, as well as in plaintiffs' petition; it being alleged that the mortgage had been duly recorded in Wise county on July 28, 1926.

Plaintiff further alleged, in substance, that thereafter, to wit, on January 23, 1927, the defendant, acting by its agent, a Mr. Pooler, with both actual and constructive notice of plaintiff's legal title and right, seized and

took charge of such property and removed the same from Wise county to Breckenridge, Stephens county, thereby converting the same to plaintiff's damage in the sum of $8,825.20, the value of the property.

The defendant Bridgeport Machine Company answered by general and special exceptions, a general denial, and specially that about April 23, 1925, C. W. Whitehead and L. J. Maxwell, doing business under the firm name of Whitehead & Maxwell, executed and delivered to the defendant their certain promissory note in the principal sum of $8,000, to secure which Whitehead and Maxwell, acting through Whitehead, on April 23, 1925, executed and delivered to the defendant a chattel mortgage covering a list of oil well drilling tools attached to the answer as an exhibit; that said mortgage provided that, in event the note was not paid according to its terms, the mortgagee should be entitled to take possession of the property and sell the same; and further provided that the mortgage should be security for any other indebtedness then or thereafter to accrue in favor of the mortgagee. It was further alleged that thereafter Whitehead assumed the liabilities and took over the assets of the firm and moved said tools to different places from where originally located, a part to Beckham county, Okl., some to Wilbarger county, Tex., some to Wichita county, Tex., some to Wise county, and some to Collin county, Tex., that thereafter, on November 26, 1926, the defendant instituted suit in the district court of Stephens county, Tex., against Whitehead on said note and upon an open account contracted by Whitehead in the sum of $2,448.59, seeking to recover the amount of said indebtedness and to foreclose said mortgage upon the tools located in Wise and Collin counties; that defendant duly caused the issuance of a writ of sequestration to take possession of the tools located in Wise county, which was levied upon the property in question; that, the property not having been replevied by defendant Whitehead and the same being located at a place in Wise county where it was too expensive and impracticable to care for the same, the defendant replevied the property, took the tools, and brought them to Stephens county, an itemized list of which was attached to defendant's answer as an exhibit.

The defendant further alleged that the tools had been so taken in good faith in the belief that the same were covered by a chattel mortgage, and that the items taken by it and not definitely mentioned in its chattel mortgage was believed by defendant to be replacements, as called for in its mortgage, and that the purpose of taking the same under the writ of sequestration was to preserve and protect the property and the rights of defendant, and not in violation of plaintiff's rights; that, if said property taken by the defendant was covered by the mortgage of plaintiff, which was not admitted, plaintiff was negligent and careless in permitting said property to be mingled and mixed with said property of Whitehead, upon which defendant had a mortgage; that the tools had been kept safely, and defendant was still ready, able and willing to deliver said tools, or any part thereof, in event it should be found that they, or any part, are the same as described in plaintiff's mortgage; that defendant had never refused to surrender them, nor had any demand been made for them, and that should it be established that they are, or any part of them, the same tools upon which plaintiff has a mortgage, plaintiff is not entitled to recover as for a conversion of the same, for they came into the hands of defendant lawfully, under a proper writ, etc.

The court overruled the defendant's demurrers, and, after the conclusion of the testimony, the case was submitted to a jury upon the following charge, which, together with the answers of the jury, reads as follows:

"Gentlemen of the Jury:

"This case will be submitted to you upon special issues and your answers to said issues, as you find from the evidence and facts in this case, when signed by your foreman, will constitute your verdict.

"This is a suit by the plaintiff and against the defendants for the conversion of certain personal property alleged to have belonged to the plaintiff and taken from him by the defendants while same was situated in the north part of Wise County, Texas, about January 3rd, 1927.

"I charge you as a matter of law that conversion is defined to be any distinct act or dominion wrongfully asserted over another's property, in denial of his right, or inconsistent with it.

"Special Issue No. 1. Bearing in mind the foregoing definition of conversion, do you find from a preponderance of the testimony that defendant in Wise County, Texas, on or about the day and date alleged in plaintiff's petition, did take and convert to his own use any of plaintiff's property, which is described in plaintiff's petition herein? Answer: Yes.

"Special Issue No. 2: If you have answered special issue No. 1 'No' then you need not answer any further special issues herein; but, if you have answered said special issue 'yes,' then state: What was the reasonable market value of the said property, if any, so taken by the defendants, if you have found that they did take the same, on January 3, 1927, at its location in Wise County, Texas? Answer: $6,800.00.

"You are the exclusive judges of the facts proved, of the credibility of the witnesses, and of the weight to be given their testimony,

but you are bound to receive the law from the court, which is herein given you, and be governed thereby."

Upon the verdict so returned, judgment was rendered in favor of the plaintiff for the sum of $5,500 (a remittitur of $1,300.00 having been filed), together with interest thereon at the rate of 6 per cent. per annum from January 3, 1927, the date of the conversion, from which judgment the defendant has duly prosecuted this appeal.

We are confronted with fifty assignments of error, thirty-nine propositions, with as many supporting arguments, and four and one-half pages of authorities, presenting minute criticisms of the proceedings of the trial below. It is manifest that we cannot discuss and dispose of each assignment separately without unduly extending this opinion. We will therefore, in a general way, and as illustrating the general character of the propositions, briefly notice some of the propositions of error urged.

█ The plaintiff was not suing to foreclose his mortgage. It was merely referred to as the basis of his right, stating the time and place of its record, as well as its substance, and hence his petition was not demurrable, on the ground that the mortgage was not set forth in hæc verba; nor upon the ground that it was also alleged that plaintiff was the owner of the converted property at the time of its conversion. The evidence shows without contradiction that the mortgagor had defaulted in the payment of the note to secure which the mortgage had been given, and that the property had been surrendered to the plaintiff by the mortgagor, Dalton, to do with as he pleased. Plaintiff, therefore, either as owner or mortgagee in possession, was entitled to recover on proof of his allegations of conversion. Stidham v. Lewis (Tex. Civ. App.) 23 S.W.(2d) 851; Terry v. Spearman (Tex. Com. App.) 259 S. W. 563, 564; Parlin & Orendorff Co. v. Moore, 28 Tex. Civ. App. 243, 66 S. W. 798; Barron v. San Angelo Natl. Bank (Tex. Civ. App.) 138 S. W. 142.

██ Nor do we think the mortgage was inadmissible in evidence because of the form of the allegations relating thereto, above noted, or because neither it nor the petition gave distinguishing marks to each item constituting the string of tools, for the conversion of which plaintiff sued. The several items were separately set out in both the mortgage and in the petition, and all, constituting the unit, were transported from Oklahoma to Wise county, Tex., for the purpose of drilling an oil well. The evidence is ample, if not uncontradicted, to show that all items constituting the unit and so specified and transported were taken and converted by defendant as alleged without proof of title in it. There were no distinguishing marks on the items claimed by plaintiff, and the question was simply one of identity.

█ Numerous errors are assigned to rulings of the court during the introduction of testimony. The witness Dalton, who executed the mortgage under which appellee claims, testified, among other things, that the string of tools in question were located at a named point in Oklahoma when he entered into a contract with a Mr. Walker for the drilling of a wildcat well at the point in Wise county, from which they had been removed, pursuant to which the tools were shipped to Wise county. This testimony was objected to as being in violation of the best evidence rule; the contention being that the written contract with Walker was the best evidence of its contents and effect. Neither the terms nor the obligations of Walker's contract were involved or important in the present suit, and the reference thereto was merely explanatory of the relevant facts that the tools were owned by the witness and by his authority shipped to Wise county. It seems evident that the contention that the court erred is without merit.

█ Plaintiff's petition alleged that the tools had been "shipped" from Oklahoma to Wise county, and hence that the court erred in permitting the introduction of testimony that a part of the tools had been transported by "truck"; the contention is that the variance in the means of shipment employed is misleading. Counsel urges this contention with apparent seriousness, but we think it is without merit.

█ Plaintiff pleaded, among other things, that Walker had contracted to drill the well in Wise county, and had defaulted, whereupon Whitehead (under whom defendant claimed) took over the undertaking. In this condition of the pleading Dalton was permitted to testify over defendant's objection that thereafter he and the plaintiff went to the location, and he (Dalton) then and there told Mr. Geers that he (Dalton) could not move the tools, and told him (Geers) to apply it on what he (Dalton) owed him. After that he never asserted any right of ownership over the tools. Defendant's objection to this was that plaintiff's pleadings "did not put the defendant upon notice of any right or claim other than that of the holder of the mortgage."

While the surrender of the property to plaintiff, as stated, in a legal sense may be said to constitute the plaintiff the legal owner, and as such entitled to sue for the conversion of the property, yet, without reliance upon allegations or testimony to this effect, the plaintiff certainly was entitled under his mortgage to maintain an action for the conversion of the property which thereby lessened the value of his security, so that the

allegation and testimony relating to the surrender of the property and the consequent vesting of title in plaintiff neither increased nor diminished plaintiff's right, and hence immaterial. The objection here noted, therefore, must be overruled.

The following witnesses, testifying in behalf of plaintiff, gave opinions of the value of the property in controversy. The testimony of each and all was objected to on the ground that they were not sufficiently qualified.

Dalton testified, in substance, that he had known the string of tools since when new; that he had handled some 10 strings of tools, had bought and sold such tools, and seen others who dealt in them; that the tools in question had been only used in drilling about 4,000 feet before being sent to Wise county; that that string of tools set up on the location would have the reasonable market value of around $10,000.

The witness Hartwell testified that, assuming the tools described in the mortgage to have been used in drilling a 4,000 foot well, the reasonable market value of them at the time would be around $10,000; he further stated that he was acquainted with the equipment, and, from his experience in handling oil well equipment of the kind and seeing it bought and sold on the market, he was acquainted with the reasonable market value of the same located in Wise county in December, 1926, and January, 1927.

Mascho testified that he saw the tools, but did not inspect them in detail, but just sized them up as a whole; that they were something like a string of tools he was using at Bowie; that the tools were worth about $10,000; that he would say the reasonable market value of the tools in question would be "around $10,000."

Witness Hite, when asked "what is the market value of this set of tools, set upon location in Wise County, Texas, answered, "About $1250.00."

The several bills of exception to the introduction of this testimony was accompanied with the further statement signed by the trial judge:

"Other testimony was given by the witness previous to the above, as shown in the statement of facts, bearing on his qualifications, which, in the opinion of the court, qualified the witness to give such testimony."

 It is well settled by the authorities that to be available it must appear from an examination of the bill of exception that an error was committed of a prejudicial character, and our statutes (article 2237) specifically provide that:

"The objection to the ruling or action of the court shall be stated with such circumstances, or so much of the evidence as may be necessary to explain, and no more, and the whole as briefly as possible."

With the statement of the trial court that there was other testimony not shown in the bills, sufficient, in his opinion, to show that the witness was qualified and "such other testimony" not appearing in the bill, it is clear, we think, that no reversible error is presented in any of the bills of exception referred to.

 It is not essential to the plaintiff's right of recovery that the defendant have actual notice that the tools in question were claimed by the plaintiff as his property under the mortgage set out in the petition. Therefore, we see no material error in the action of the court in permitting the introduction in answer to an interrogatory of the witness Pooler, under whose supervision and authority the tools had been removed, to the effect that "Whitehead told him they were not his tools and he didn't believe Whitehead. * * *"

Defendant objected to the refusal of the court to give the following special instruction, to wit:

"Did the defendant, acting through its agents, take the tools and other drilling equipment that was taken by it from the location in Wise County, Texas, merely for the purpose in good faith of protecting the property covered by the Whitehead mortgage?"

 The instruction, of course, is predicated upon that part of defendant's answer alleging that it took the property in good faith, believing it was the property of Whitehead, in support of which it offered evidence. The record discloses, however, that in defendant's original answer it was therein denied that the tools taken belonged to the plaintiff; and neither in the pleadings nor in the evidence was there any unqualified tender of the tools in return. The fact of the taking and removal of the property is undisputed, and we know of no rule which would require the plaintiff, in order to sustain his recovery, that he go to Stephens county and identify his property.

 In King v. Boerne State Bank (Tex. Civ. App.) 159 S. W. 433, it is said:

"Where conversion of personal property has taken place, the owner is not required to accept a return thereof, if tendered, and hence such tender is no defense to a suit for damages for the conversion."

This case is cited with approval in an opinion of this court in the later case of Kolp v. Prewitt, 9 S.W.(2d) 490.

 The court, therefore, properly refused to submit the special charge, and the same must be said of the refusal of the court to submit the defendant's special charge No.

2, which sought to elicit a finding of whether the defendant's taking had been in good faith, believing they had a lien on the tools by virtue of Whitehead's mortgage, and with intention to yield possession of any part thereof, or all, to which any one else might have a superior right whenever such superior right may be made known to it.

Nor do we think the court was required to submit the special instruction requiring the jury to find what particular items constituted the string of tools which were indisputably converted.

While the witnesses in behalf of defendant testified to the effect that the string of tools in question had a market value of only about $600, we think the testimony in behalf of plaintiff, having been accepted by the jury, is controlling, in addition to which we might add that witnesses testifying in behalf of defendant never saw the tools in question and gave an opinion on the theory that the tools were secondhand tools, such as were frequently sold by dealers in secondhand tools. We therefore feel unable to say that the verdict, as is insisted, is against the great preponderance of the testimony, and hence should be set aside.

The judgment is also objected to on the ground that the court erroneously allowed interest at the rate of 6 per cent. per annum from the 31st day of July, 1923, the date of the conversion, the contention being that such interest was but an element of damages sought by the plaintiff, and it, not having been included in the verdict of the jury, should not have been included in the court's judgment. In support of this proposition, appellant cites the cases of Thompson v. Van Natta (Tex. Civ. App.) 277 S. W. 711, in which it was held that under such circumstances the inclusion of interest in a judgment on a verdict for the recovery of a broker's commission constituted error. See, also, Davis v. Morris, 257 S. W. 328, 329, by the Austin Court of Civil Appeals, which holds that, in suits for damages to injuries to live stock received in shipments, interest is not recoverable as interest, but as damages, and not recoverable in the absence of a jury finding therefor. We are of the opinion, however, that the better authorities sustain the ruling of the court in cases where, as here, property has been converted having a fixed market value, as found by the jury, and not problematical, as in cases where the damages are not certain, such as in cases of simple trespass or mere injuries to person or property. See Texarkana & Ft. S. R. Co. v. Brinkman, 288 S. W. 852, by the Beaumont Court of Civil Appeals, affirmed by the Supreme Court in 292 S. W. 860; Orbeck v. Alfei (Tex. Civ. App.) 276 S. W. 947, by the Waco Court of Civil Appeals; Ewing et al. v. Foley, 115 Tex. 222, 280 S. W. 499, 44 A. L. R. 627.

There are a number of other assignments of error, such as urging objections to the arguments of counsel and charges of the court, which have been examined, but we find no prejudicial error in any of them. All assignments of error are accordingly overruled, and the judgment is affirmed.